# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
-------------------------------------------------------------------X

| | | |
|---|---|---|
| QATAR AIRWAYS, Q.C.S.C., | : | |
| | | Index No. |
| Plaintiff, | : | |
| | | Summons Filed: |
| v. | : | December 16, 2022 |
| | | |
| AMERICAN AIRLINES, INC, | : | **SUMMONS** |
| | | |
| Defendant. | : | |

-------------------------------------------------------------------X

To the above-named Defendant(s):

    You are hereby summoned and required to answer the attached complaint of the plaintiff in this action and to serve a copy of your answer upon the attorneys for the plaintiff at the address stated below.

    If this summons was personally delivered to you in the State of New York, you must serve the answer within 20 days after such service, excluding the day of service. If this summons was not personally delivered to you in the State of New York, you must serve the answer within 30 days after service of the summons is complete, as provided by law.

    If you do not serve an answer to the attached complaint within the applicable time limitation stated above, a judgment may be entered against you, by default, for the relief demanded in the complaint.

    Plaintiff designates Queens County as the place of trial.

    The basis of venue is proper pursuant to CPLR Section 503(a) because a substantial part of the events or omissions giving rise to the claim occurred in the County of Queens.

Dated: New York, New York
       December 16, 2022

                                                     CLYDE & CO US LLP

                                                     By: /s/ Andrew J. Harakas
                                                         Andrew J. Harakas
                                                     The Chrysler Building
                                                     405 Lexington Avenue, 16th Floor
                                                     New York, New York 10174
                                                     Tel: (212) 710-3900
                                                     andrew.harakas@clydeco.us
                                                     *Attorneys for Plaintiff*
                                                     *Qatar Airways, Q.C.S.C.*

1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
-----------------------------------------------------------------X

| | | |
|---|---|---|
| QATAR AIRWAYS, Q.C.S.C., | : | |
| Plaintiff, | : | Index No. |
| v. | : | **COMPLAINT** |
| AMERICAN AIRLINES, INC, | : | |
| Defendant. | : | |

-----------------------------------------------------------------X

Plaintiff Qatar Airways Q.C.S.C. ("QR"), by and through its attorneys, Clyde & Co US LLP, for its Complaint against Defendant American Airlines, Inc. ("American"), alleges, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

### PRELIMINARY STATEMENT

1. This action arises from damage sustained to a QR Boeing 777-300ER aircraft bearing registration number A7-BEK (the "QR Aircraft") at John F. Kennedy International Airport ("JFK Airport") Terminal 8 ("JFK T8") caused by American's grossly negligent handling of a Passenger Boarding Bridge malfunction at Gate 8 of JFK T8 on July 21, 2019.

2. QR seeks recovery of $11,718,090.30 for damages sustained.

### JURISDICTION

3. QR is a corporation that is incorporated in the State of Qatar and has its principal place of business in the State of Qatar. QR is a foreign air carrier that operates flights between the State of Qatar and John F. Kennedy International Airport (JFK) in Jamaica, New York.

4. Upon information and belief, American is a corporation that is incorporated in Texas and has its principal place of business in Fort Worth, Texas.

1

5. At all relevant times, American was and has been continuously doing business in the State of New York.

6. This Court has personal jurisdiction over American pursuant to New York Civil Practice Law and Rule 302 because this action arises from American's transaction of business within the State of New York, American's contracting to supply goods or services in the State, and American's commission of a tortious act within New York State in connection with the provision of services for common carriers, airport operations and airport safety.

7. Venue in this action is proper pursuant to CPLR Section 503(a) because a substantial part of the events or omissions giving rise to the claim occurred in the County of Queens.

## STATEMENT OF FACTS

8. At all relevant times, American leased and leases JFK T8 from third-party the Port Authority of New York and New Jersey and was and is responsible for JFK T8 maintenance and parking gate allocation as well for the control of aircraft movement at JFK T8.

9. On or about June 11, 2018, QR and American entered into an agreement entitled "Terminal 8 Space Permit" (the "JFK T8 Agreement") for QR's use and occupancy of JFK T8.

10. Pursuant to the JFK T8 Agreement, QR obtained space at JFK T8 for its exclusive use ("QR's Exclusive Use Space") and was permitted to use and occupy certain JFK T8 common use facilities (the "JFK T8 Common Use Space").

11. Pursuant to the JFK T8 Agreement, the JFK T8 Common Use Space was operated, maintained and controlled by or on behalf of American.

12. The JFK T8 Common Use Space included all gate areas used by QR at JFK T8, which, among other things, consisted of ramp areas, Passenger Boarding Bridges and associated equipment/services.

2

13. American was responsible for designating and approving assignment of Common Use Spaces to QR, including gate areas.

14. The JFK T8 Agreement was in effect on July 21, 2019.

15. On July 21, 2019, American operated, maintained, and controlled certain facilities at JFK T8, including the Passenger Boarding Bridge located at JFK T8 Gate 8 ("Gate 8").

16. On July 21, 2019, QR owned and operated the QR Aircraft which was operating as flight QR 701 from Doha, Qatar (DOH) to JFK.

17. On July 21, 2019, the QR Aircraft was legally authorized to be present within JFK and JFK T8.

18. On July 21, 2019, flight QR 701 arrived at JFK at approximately 3:00 PM EDT.

19. On July 21, 2019, pursuant to the JFK T8 Agreement, American assigned flight QR 701 to Gate 8 for the deplaning of passengers and unloading of baggage and cargo.

20. After all passengers deplaned the QR Aircraft and all baggage and cargo were offloaded, the QR Aircraft was required to be repositioned from Gate 8 to a remote parking position to accommodate an aircraft operated by Qantas Airways (the "Qantas Aircraft"), which was also assigned Gate 8 for the arrival of Qantas flight QF 11 and departure of QF 12.

21. At approximately 4:30 PM EDT, the QR Aircraft was pushed back from Gate 8 and repositioned to a remote parking position.

22. The Qantas Aircraft then arrived at Gate 8 for the deplaning of the Qantas flight QF11 passengers.

23. Prior to the deplaning and offloading of Qantas flight QF 11, the Gate 8 Passenger Boarding malfunctioned and could not maneuver from its position.

3

24. The malfunction allegedly was rectified by Qantas, its ground handing agent or American.

25. At approximately 6:20 PM EDT, the Gate 8 Passenger Boarding Bridge malfunctioned again while the QF Aircraft was being readied for pushback from Gate 8.

26. Qantas and/or its ground handler was unable to fully retract the Gate 8 Passenger Boarding Bridge.

27. Although the Qantas Aircraft was able to be pushed back from Gate 8, the Passenger Boarding Bridge remained in an improper position after push back encroaching the aircraft safety envelope.

28. At approximately 6:30 PM EDT, Qantas or a Qantas agent notified American of the Passenger Boarding Bridge malfunction.

29. Having been notified of the Passenger Boarding Bridge malfunction, at approximately 6:45 PM EDT, an American maintenance vehicle and personnel arrived at Gate 8 to inspect the Passenger Boarding Bridge.

30. American failed to notify or communicate with QR, Air Traffic Control ("ATC") or the persons performing the towing the QR Aircraft to Gate 8 of the Passenger Boarding Bridge malfunction and that it was encroaching the aircraft safety envelope.

31. At approximately 7:02 PM EDT, having not received any notice or warning of the Passenger Boarding Bridge malfunction and that the Passenger Boarding Bridge was encroaching the aircraft safety envelope, ATC cleared the repositioning of QR Aircraft to Gate 8 for the loading of passenger for QR flight QR 702.

32. ATC's clearance of the QR Aircraft's return to Gate 8 occurred approximately 30 minutes *after* Qantas notified American of the Passenger Boarding Bridge malfunction and

4

improper encroachment of the aircraft safety envelope and approximately 15 minutes *after* American facilities maintenance personnel had arrived at Gate 8 to supposedly correct the malfunction.

33. After receiving ATC clearance and without any notice or warning by American that the Passenger Boarding Bridge had malfunctioned and was encroaching the aircraft safety envelope, the persons performing the towing commenced towing the QR Aircraft from its remote parking position to Gate 8.

34. While the QR Aircraft was being towed into Gate 8, the American facilities maintenance personnel remained in the vicinity of Gate 8, but still failed to warn QR or the persons performing the towing the QR Aircraft that Gate 8 Passenger Boarding Bridge was encroaching the aircraft safety envelope.

35. At no time did American communicate to QR, ATC or the persons performing the towing of the QR Aircraft, via NOTAM or other means, of any dangerous condition at Gate 8 or that the Passenger Boarding Bridge was encroaching the aircraft safety envelope.

36. Due to American's failure to properly correct the Passenger Boarding Bridge malfunction, take the Passenger Boarding Bridge out of service, or notify and warn QR, ATC, or the persons performing the towing of the QR Aircraft of the Passenger Boarding Bridge malfunction and dangerous condition at Gate 8 (*i.e.*, the Passenger Boarding Bridge encroachment the aircraft safety envelope), the QR Aircraft struck the Passenger Boarding Bridge while being towed into Gate 8.

37. As a result, the QR Aircraft sustained significant structural damage resulting in the cancellation of flight QR 701.

38. Damage sustained by QR as a result of the incident includes:

5

a. Two skin punctures and an approximate 14-foot tear in the skin from the upper forward fuselage aft of QR Aircraft door L1 leading up to door L2 requiring extensive repairs and the aircraft being placed out of service for approximately 40 days;

b. Costs incurred due to the cancellation of flight QR 701 and passenger delays, including passenger hotel accommodations and catering, additional QR flight and cabin crew costs, and ground handling costs; and

c. Loss of revenue and diminution of the value of the QR Aircraft.

39. On July 22, 2019, QR wrote to American to advise that QR held it responsible for the damage to the QR Aircraft and reserved the right to assert a claim for any damages, losses, and costs incurred as a result of the incident.

40. Upon information and belief, American placed the Passenger Boarding Bridge that struck the Aircraft out of commission for days after the incident.

41. On August 15, 2019, QR again wrote to American instructing American to take proper and appropriate steps to ensure that American preserved all documents or information relevant to the incident.

42. Despite QR's request that American preserve all such documents and information, American claims that it does not possess any records of maintenance or repairs being performed on the Passenger Boarding Bridge at Gate 8 on the date of the incident, July 21, 2019.

43. Incredibly, American claims that it does not possess an incident report of the incident that occurred at Gate 8 on July 21, 2019, despite American operating, maintaining and controlling the gate area, including the Passenger Boarding Bridge, as JFK T8 Common Use Space.

44. As a result of the incident, QR sustained no less than US $11,718,090.30 in damages, including the cost of repairing the aircraft, aircraft lease and insurance costs, diminution of the value of the QR Aircraft and costs incurred as a result of the cancellation of flight QR 702.

## COUNT I – BREACH OF CONTRACT

45. QR repeats and realleges paragraph 1 through 44 of this Complaint as though fully set forth herein.

46. At all times relevant, QR and American were parties to the JFK T8 Agreement which was a valid and binding contract for QR's occupancy and use of JFK T8.

47. QR performed all conditions precedent, covenants, and promises in accordance with the terms and conditions of the JFK T8 Agreement.

48. Pursuant to the JFK T8 Agreement, American was to operate and maintain JFK T8 facilities including the Passenger Boarding Bridge at Gate 8, in reasonable working order.

49. Pursuant to the JFK T8 Agreement, American was to designate and approve assignment to QR of JFK T8 facilities for use by QR, including JFK T8 gates and Passenger Boarding Bridges.

50. American breached the JFK T8 Agreement by failing to maintain and repair the Passenger Boarding Bridge, to warn QR and other entities and individuals responsible for the towing of the QR Aircraft of the Passenger Boarding Bridge malfunction at Gate 8 despite having knowledge of the said malfunction. to assign an operable gate for QR flight QR 702, and to take the inoperable and dangerous Gate 8 out of service.

51. As a result of American's breach, QR sustained no less than US $11,718,090.30 in damages together with costs and disbursement of this action, interest, and reasonable attorney's fees.

7

## COUNT II – NEGLIGENCE

52. QR repeats and realleges paragraph 1 through 51 of this Complaint as though fully set forth herein.

53. QR's damages were caused by and resulted from the negligence of American.

54. At all relevant times, American had a duty to QR to safely operate, maintain and control the JFK T8 gate areas, including the Passenger Boarding Bridge that caused damage to the QR Aircraft.

55. On July 21, 2019, a dangerous condition existed at Gate 8 of JFK T8 in which the Passenger Boarding Bridge malfunctioned and was encroaching the aircraft safety envelope.

56. American had notice of the dangerous condition.

57. American, by and through its officers, employees, agents, and/or assigns, breached its duty to QR by failing to maintain the Passenger Boarding Bridge; to repair the Passenger Boarding Bridge prior to the QR Aircraft's positioning at the gate; to warn of a dangerous condition caused by the Passenger Boarding Bridge malfunction; to assign an operable gate for QR flight QR 702; to take the inoperable and dangerous Gate 8 out of service; and to document or preserve documentation of the Passenger Boarding Bridge malfunction; American's response to the malfunction and the incident.

58. The foregoing acts and omissions of American proximately caused the incident and damages sustained by QR.

59. By reason of the foregoing, American is liable in the amount of no less than $11,718,090.30 together with costs and disbursement of this action, interest, and reasonable attorney's fees.

## COUNT III – GROSS NEGLIGENCE

60. QR repeats and realleges paragraph 1 through 59 of this Complaint as though fully set forth herein.

61. QR's damages were caused by and resulted from the gross negligence of American.

62. At all relevant times, American had a duty to QR to safely operate, maintain and control the JFK T8 gate areas, including the Passenger Boarding Bridge that caused damage to the QR Aircraft.

63. On July 21, 2019, a dangerous condition existed at Gate 8 of JFK T8 in which the Passenger Boarding Bridge malfunctioned and was encroaching the aircraft safety envelope.

64. American had notice of the dangerous condition.

65. American, by and through its officers, employees, agents, and/or assigns, breached its duty to QR by failing to maintain the Passenger Boarding Bridge, to repair the Passenger Boarding Bridge prior to the QR Aircraft's positioning at the gate, to warn of a dangerous condition caused by the Passenger Boarding Bridge malfunction; to assign an operable gate for QR flight QR 702, to take the inoperable and dangerous Gate 8 out of service, and to document or preserve documentation of the Passenger Boarding Bridge malfunction; American's response to the malfunction and the incident.

66. American's knowing and reckless failure to maintain the Passenger Boarding Bridge, to repair the Passenger Boarding Bridge prior to the QR Aircraft's positioning at the gate, to warn of a dangerous condition caused by the Passenger Boarding Bridge malfunction, to assign an operable gate for QR flight QR 702, to take the inoperable and dangerous Gate 8 out of service, and to document or preserve documentation of the Passenger Boarding Bridge malfunction; American's response to the malfunction and the incident constituted gross negligence.

9

67. The foregoing acts and omissions of American proximately caused the incident and damages sustained by QR.

68. By reason of the foregoing, American is liable in the amount of no less than $11,718,090.30 together with costs and disbursements of this action, interest, and reasonable attorney's fees.

**WHEREFORE,** Plaintiff Qatar Airways Q.C.S.C. respectfully requests judgment as follows:

A. On the First Cause of Action awarding damages in favor of Qatar Airways Q.C.S.C., in an amount to be determined at trial, but in no event less than $11,718,090.30, plus costs and disbursements of this action, interest and reasonable attorney's fees.

B. On the Second Cause of Action awarding damages in favor of Qatar Airways Q.C.S.C., in an amount to be determined at trial, but in no event less than $11,718,090.30, plus costs and disbursements of this action, interest and reasonable attorney's fees.

C. On the Third Cause of Action awarding damages in favor of Qatar Airways Q.C.S.C., in an amount to be determined at trial, but in no event less than $11,718,090.30, plus costs and disbursements of this action, interest and reasonable attorney's fees.

D. Granting Qatar Airways Q.C.S.C. such other and further relief as the Court deems just and proper.

Dated: New York, New York
December 16, 2022

Respectfully submitted,

CLYDE & CO US LLP

By: /s/ Andrew J. Harakas
    Andrew J. Harakas
    Philip R. Weissman
The Chrysler Building
405 Lexington Avenue, 16th Floor
New York, New York 10174
Tel: (212) 710-3900
andrew.harakas@clydeco.us
philip.weissman@clydeco.us

*Attorneys for Plaintiff*
*Qatar Airways, Q.C.S.C.*